# Woodward Iron Company *v.* Jones.

*Action by Employee against Domestic Corporation for Personal Injuries.*

1. *Contributory negligence; when employee not guilty of, after notifying employer of defect in machinery.*—When a workman or servant gives notice to his employer of a defect in the machinery which he is required to use, and relying on his employer's promise to have the defect remedied, continues in the service, he is not guilty of contributory negligence, "at least until a reasonable time elapses within which to make the repairs."

2. *In action for damages, employee need not aver that employer had reasonable time after notice to repair.*—In an action to recover damages on account of injuries afterwards sustained, it is not necessary to aver in the complaint that the employer had had reasonable time to remedy the defect after the notice was given.

3. *Contributory negligence; when employee guilty of.*—When the plaintiff was working in the shaft of a coal mine, through which ran two railroad tracks, over which cars descended and brought up coal, the motive power being supplied by a stationary steam engine above ground; and had charge of a switch at a resting place along the line of a shaft, where descending cars could be turned off or placed back on the track, and of an adjacent sump in which water was accumulated, and from which it was pumped to the surface by the engine; and while standing on the track, repairing the water-pipe which had become clogged, was struck by a descending car, which he did not see or hear until too late, on account of the noise and steam in the shaft, the steam having escaped from a defective joint in the pipe, to which he had called the attention of the superintendent two days before; *held*, that the plaintiff knowing that the empty car was above, and having neglected to have the switch turned by his assistant, whom he he had sent up to that point for another purpose, and being cognizant of the noise and steam which filled the shaft, was guilty of contributory negligence, and was not entitled to recover, although the general order was that a descending car should not be stopped at the switch unless a full car was ready to be carried back.

APPEAL from the City Court of Birmingham.

Tried before Hon. H. A. SHARPE.

The opinion states the case. Charge No. 5, referred to in the opinion, was in the following language: "If the jury believe all the evidence in this case they will find for the defendant."

[Woodward Iron Co. v. Jones.]

Hewitt, Walker & Porter for appellant.

Smith & Lowe, *contra*.

STONE, C. J.—The Woodward Iron Company, appellant in this cause, was engaged in mining coal, as one line of its business. The coal was reached by a shaft sunk in the earth ; and extending down the shaft were two lines of railroad track, over which the cars descended and brought up the coal. The cars were moved up and down the tracks by a steam engine, which was above ground, and stationary. The force was applied to the cars by means of an iron rope. The cars were let down empty, and drawn back loaded. There were rests, or stopping points, along the line of the shaft, styled in the testimony "lifts," and at these "lifts" there were switches on the track, by which the descending cars could be turned off, or placed back on the track. These switches were so arranged and distributed up and down the shaft, as to be connected with the rooms or excavations, from which the coal was mined. There were also along the line of the shaft what are, in mining phrase, called "sumps"—rude wells or cisterns, in which the water in the mine was trained to collect ; and from which it was pumped out of the mine by the steam engine which moved the cars in the shaft. One Harrison was the superintendent of the entire works, representing and performing the functions of the Iron Company, and Jones was an employee and laborer, under his direction. *Corcoran v. Holbrook*, 59 N. Y. 517; *Ford v. Fitchburg R. R. Co.*, 110 Mass. 240. The first "lift," or rest on the line of the shaft, and first switch, were about seventy five yards below the surface, or entrance to the shaft. Above this switch, and near the entrance, was the first pump. Below the switch, some seventy five feet, was a "sump," near the line of the track. A steam pipe extended down the shaft, through which hot steam passes from the engine. The business assigned to Jones was to superintend the switch, attach and detach cars, superintend the pump, and the cistern or "sump" in which the water collected. He had an assistant, a colored man under his control; but he was under the control of Harrison, the superintendent.

The present suit is for the recovery of damages of the Woodward Iron Company, for an injury alleged to have been suffered through the negligence of Harrison, its superintendent. The averment of the complaint on which the right of action is based is in the following language : "The plaintiff, being then and there, on, to wit, the 10th day of March 1884, a servant of the defendant, engaged in keeping said pumps in operation, and in attaching loaded cars to the train operated in said mines

[Woodward Iron Co. v. Jones.]

as aforesaid, was engaged in relieving the water pipes of said pumps of mud that had accumulated therein, and was obstructing the passage of water therein ; and while so engaged at the place where he was obliged to do said work, was stricken by one of defendant's cars operated in said mine as aforesaid, and badly bruised and injured; and at the time plaintiff was stricken as aforesaid, he did not see the said car, and was unable to see and get out of the way of the same, in consequence of the steam that had accumulated in said tunnel or slope between him and the said cars. And the plaintiff avers that said steam had escaped from said steam pipe at a joint thereof, and that he had called the attention of the defendant to said joint, and that the same was out of repair, and the defendant had promised the plaintiff to have the same repaired at night when the said mines were not being operated, but negligently omitted to do so ; and relying on the promise of the defendant, the plaintiff thereafter continued to perform his duties as aforesaid, and was injured as aforesaid." There was a demurrer to the complaint, assigning, among others, the ground that "there is no allegation that the defendant had had time to repair the same from said notice prior to the alleged injury." The court overruled the demurrer.

The demurrer raises the question squarely, what change, if any, is wrought in the *status* of the parties, by a notice given to the employer of a defect in the machinery, and his promise to have the same remedied. If the employee, after such notice and promise, remain in the service, is this an implied agreement on his part to take the risk on himself, or is the effect to continue or revive the liability of the employer, and to absolve the employee from the imputation of contributory negligence, springing out of the continued service ? The authorities are overwhelmingly in favor of the latter of these propositions, at least, until a reasonable time elapses within which to make the repairs. Waiting such a reasonable time, it would seem, if the repairs are not made, the employee should quit the service, if perilous ; and failing to do so, is it illogical to presume he agrees to incur the risk? And would he not thereby be guilty of proximate contributory negligence ? We propound these inquiries with no intention of answering them, as this phase of the question is not raised by this record. Our purpose is to prevent a misinterpretation of our ruling. Beach Contr. Neg. § 140 ; *Holmes v. Clark*, 6 Hurlst. & Nor. 349 ; S. C. 7 *Id.* 937 ; *Snow v. H. R. R. Co.*, 8 Allen 441 ; *Patterson v. P. & C. R. R. Co.*, 76 Penn. St. 389 ; S. C. 18 Amer Rep. 412 ; *Kroy v. Chic. R. I. and P. R. R. Co.*, 32 Iowa 357 ; *Greenleaf v. Dub. & S. C. R. R. Co.*, 33 *Id.* 52 ; 2 Thompson Neg. 1010 ; *Buzzell v. L. Manuf. Co.* 48 Me. 113.

The City Court did not err in overruling the demurrer.

[Woodward Iron Co. v. Jones.]

We have stated above that the only negligence with which the defendant is charged was the failure to repair the defective joint in the steam pipe. The accident and consequent injury occurred about two days after the superintendent was notified of the defective joint. The testimony most favorable to plaintiff—his own testimony—shows the following state of facts at, and immediately preceding the injury: Plaintiff Jones and his colored assistant were at their post at the first lift and switch, and together went down to the sump. They found the sump full of water and overflowing—the nozzle of the hose connected with the pump above being so choked with mud, that the pump lifted no water. Plaintiff immediately set to work to clear the pipe of mud, and was thus engaged twenty or thirty minutes when the descending car struck him. Plaintiff while so engaged was standing on the track of the railroad, and must so stand to do the work. He knew that a car was above him, and was liable to come down at any moment. He knew the switch at the first lift was not turned, and if the car came down, it would follow, without obstruction, the line of the track on which he was standing until it reached him. While engaged in removing the mud from the nozzle of the hose, he sent his colored assistant up to the switch, but gave him no instructions to turn the switch, nor to intercept the descending car, unless there was a loaded car at the lift to be attached. The superintendent's instructions were, that a descending empty car was not to be stopped by turning the switch, unless there was, at the time and place, a loaded car to be drawn to the surface. There was no loaded car at the place. One in the shaft or slope, could ordinarily hear a descending car for a distance of seventy-five yards, and having a miner's lamp, could see it at a distance of seventy-five feet before it reached him. At the time of the accident there was such a noise in the shaft, not made by plaintiff, that he could not hear the approaching car; and the shaft was so choked with the escaped steam that he could not see the car until it got within three feet of him; but he did not know this until the car struck him. The record discloses no proof that the persons operating the engine, or any other, except plaintiff and his assistant, knew that anything was disordered at the sump, or that plaintiff was away from his post at the switch, and there is no proof that plaintiff gave any directions, or took any precautions to have himself notified of the approaching car. Plaintiff had been employed about the mine for some months, and in his present line of duty for three weeks. The defense made was that the plaintiff had, by his own negligence, contributed proximately to the injury he complained of.

In *Central R. R. & B. Co. v. Letcher*, 69 Ala. 106, this court,

[Woodward Iron Co. v. Jones.]

quoting from the language of Black, C. J., in *R. R. Co. v. Aspell*, 23 Penn. St. 147, said : "It has been a rule of law from time immemorial, and it is not likely to be changed in all time to come, that there can be no recovery for an injury caused by the mutual default of both parties. When it can be shown that it would not have happened except for the culpable negligence of the party injured, concurring with that of the other party, no action can be maintained." So, in *Gothard v. Ala. Gr. So. R. R. Co.*, 67 Ala. 114, this court said : "When contributory negligence is relied on as a defense to an action for damages, it is not essential that the plaintiff should have been the cause of the injury ; for if his negligence contributed proximately to an injury which he could have avoided by the use of ordinary care or diligence, he can not recover." In *Gonzales v. N. Y. & H. R. R. Co.*, 35 N. Y. 440, it was said to be "the duty of the injured party, who knew a train was just due, to look in the direction from which it should come, before attempting to cross the railroad track, and that if he omitted to do so, he was guilty of negligence which precluded a recovery." In *H. & Texas R'y Co. v. Fowler*, 56 Tex. 452— S. C. 8 Am. & Eng. R. R. Co., 504, it is said : "If the employee had the opportunity to observe the degree of danger attending the performance of the service, damages can not be recovered of the company on the ground that the latter knew the danger and the former did not." "When a servant is employed upon work which, equally within the knowledge of the master and the servant, is of a dangerous nature, the master is not liable for the consequences of an accident occurring to the servant in the course of that employment, unless through negligence on the part of the master, and the absence of rashness on the part of the servant."

In Whar. Neg. § 221, it is said to be the rule in this country "that a servant does not, by remaining in his master's employ, with knowledge of defects in machinery he is obliged to use, assume the risks attendant on the use of such machinery, if he has notified the employer of such defects, or protested against them, in such a way as to induce a confidence that they will be remedied. The only ground on which this exception can be justified is, that in the ordinary course of events the employee, supposing the employer would right matters, would remain in the employer's service ; and that it would be reasonable to expect such continuance. But this reasoning does not apply to cases where the employee sees that the defect has not been remedied, and yet exposes himself to it. In such case, on the principles heretofore announced, the employer's liability in this form of action ceases. He may be liable for breach of promise ; but the causal connection between his negligence and the

[Woodward Iron Co. v. Jones.]

injury is broken by the intermediate voluntary assumption of the risk by the employee." Whar. Neg., §§ 323–4; Beach Cont. Neg., §§ 64, 64, 140; Wood, Master and Servant, § 328; Cooley on Torts, 674; *Daniels v. Clegg*, 28 Mich. 52; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Cook v. Cent. R. R. & B. Co.*, 67 Ala. 533; *Haley v. Earh*, 30 N. Y. 208.

Contributory negligence, like negligence itself, is a question for the jury, when the testimony is indeterminate, and anything is left to be inferred by the jury. It is a question of law, however, when the facts are clearly made known, and the course which common prudence dictates can be readily discovered. *M. & C. R. R. Co. v. Copeland*, 61 Ala. 376; *Cook v. Cent. R. R. & B. Co.*, 67 Ala. 532; *Ala. Gr. So. R. R. Co. v. Hawk*, 72 Ala. 112; *Fernandes v. Sac. R'y Co.*, 52 Cal. 45; *Flynn v. Kansas City &c. R. R. Co.* 47 Amer. Rep. 99; S. C. 98 Mo. 195; *Hough v. Railway Company*, 100 U. S. 2013; *Union P. R'y Co. v. Fray*, 15 Amer. & Eng. R. R. Ca. 158; S. C. Kansas; *McGrath v. N. Y. & N. E. R. R. Co.*, 18 Amer. & Eng. R. R. Ca. 5; *G. H. & San A. R'y Co. v. Drew*, 46 Amer. Rep. 261; 59 Tex. 10.

We need not deny, and do not decide the question, that, under the facts of this case, negligence on the part of Harrison, the superintendent, would be negligence of the Woodward Iron Company, and dealt with as such, *Fore v. Fitchburg R. R. Co.*, 110 Mass. 240; *Corcoran v. Holbrook*, 57 N. Y. 517; *Crutchfield v. R. & D. R. R. Co.*, 98 N. C. 300. According to plaintiff's testimony—and we are discussing this case as shown on his testimony alone—it is probable there was negligence in permitting the defective joint in the steam pipe to remain out of repair for two days after being notified of it. The real question presented is, whether there was proximate contributory negligence on the part of plaintiff. Carried to its extremest tension, the testimony fixes negligence on the corporation only in its failure to repair the leaky joint in the steam pipe. It not being shown that the persons above the surface and about the engine had any notice that the sump was out of order, or that Jones was away from the switch, or in any place of danger, no fault or negligence can be predicated of the single act of letting the empty car down the slope. Was there negligence on the part of Jones, the plaintiff? We think there was. He knew the car was above, and was liable to descend at any moment. He knew the switch was so set, that the car would descend to him on the very track he was standing on. He knew steam was escaping from the steam pipe, and must he not have known the shaft was being choked with it? Having with him his miner's lamp, by the light of which he was working, is it possible he would fail to observe the accu-

mulation of steam or smoke, and consequent obscuration of his vision? If the noise was so great that he could not hear the approaching car, should he not have adopted some measure to avert the impending danger?

We are not, and can not be supposed to be cognizant of the details and wants of the service plaintiff was engaged in. Conceding that to relieve the nozzle of the hose of the mud accumulated in it, it was necessary that he should stand on the track of the railroad, this does not relieve him of the imputation of negligence in being there at the time he was injured. It would seem impossible for him to have been ignorant that the shaft was so filled with steam as to prevent his seeing the approaching car, situated as he was, and working by the light of his miner's lamp. He certainly could have abstained from standing on the railroad track, until danger was passed by the empty car passing down, or, he could have placed his negro assistant above him, to give him notice of the approaching car. And, notwithstanding his orders were not to stop a descending car, unless there was a loaded one ready to be carried back, he certainly would have felt authorized to disregard such order and stop the car, if the work at the sump was so pressing that it could not be delayed until the car passed below. Viewed in any light, the plaintiff was guilty of negligence which contributed proximately to the injury.

Applying the foregoing principles, charge No. five of those asked by defendant ought to have been given. Charge numbered two should also have been given, if it were not that one clause in the hypothesis has no evidence to support it. That clause is "If you believe, from the evidence in this case, that the plaintiff turned switch," &c. There is no evidence tending to show who turned the switch. This, even though immaterial, would justify its refusal. *Martin v. Brown*, 75 Ala. 442; *M. & E. R'y Co. v. Kolb*, 73 Ala. 396.

Reversed and remanded.