# Columbus & Western Railway Co. v. Bradford.

*Action for Damages against Railroad Company, by Administrator of Deceased Employee.*

1.  *Liability of master (or employer) for injuries to servant (or person employed); contributory negligence as defense.*—At common law, contributory negligence by the person injured was a defense to an action for damages on account of personal injuries caused by the fault of the master himself (or employer), or of a superior servant whose orders plaintiff was bound to obey; and this might consist (1) in the failure to give notice of a known defect or known negligence; or (2), after giving such notice, in failing to quit the service if it was not remedied within a reasonable time; and under statutory provisions extending the liability of the master (or employer) to injuries suffered by one servant from the negligence of a fellow-servant, though not his superior (Code, §§ 2590–92), contributory negligence is equally a defense.

2.  *Same; sufficiency of complaint; negative averments.*—When the alleged injuries were caused by the negligence of a fellow-servant, under whose orders the person injured was working, it is not necessary that the averments of the complaint should negative contributory negligence on his own part; but, when the injuries were caused "by reason of any defect in the condition of the ways, works, machinery or plant, connected with, or used in the business of the master or employer" (Code, § 2590, subd. 1), it would be necessary, *it seems*, to aver that the

[Columbus & Western Railway Co. v. Bradford.]

defect "arose from, or had not been discovered or remedied, owing to the negligence of the master or employer, or of some person in the service" to whom was intrusted the duty of seeing that the works, &c., were in proper condition.

3. *Who may sue; administrator and heirs or distributees.*—When the injuries result in death, the right of action is given to his personal representative (Code, § 2591); and it is not necessary to aver in the complaint that he left any heirs at law surviving him, though the damages recovered are to be distributed according to the statute of distributions.

4. *Negligence as between servants of railroad company in same employment; case at bar.*—Where it appeared that the plaintiff's intestate was working as a stone-mason, under the control of a supervisor, in cutting down and placing a large stone in position for use in a bridge, while it was lying between a spur track and an embankment, when a construction train approached, and passed and repassed without touching it; that the supervisor warned the workmen, after the train had passed, to keep out of its way, and they all left the cut on its next approach; that on its return a third time, a standard on the side of the last car, having slipped down through its socket, struck the stone, and threw or turned it round upon the intestate, inflicting injuries which caused his death in a few hours; and that the intestate, who had alone remained in the cut, saw the projecting standard, and declared his expectation that it would strike the stone, but did not get out of the way; *held*, that no cause of action was shown, because the intestate was acting, not under the orders of his superior, but in violation of them, and that he was guilty of contributory negligence as matter of law.

5. *Contributory negligence, as matter of law.*—When the uncontradicted evidence, free from any adverse inferences, establishes contributory negligence on the part of the plaintiff (or his intestate), the court should so instruct the jury on request, and should not submit to them the sufficiency of the evidence as matter of fact.

APPEAL from the Circuit Court of Tallapoosa.

Tried before the Hon. JAMES W. LAPSLEY.

This action was brought by Henry T. Bradford, as the administrator of the estate of John A. Bradford, deceased, against the appellant, a domestic corporation, to recover damages for the alleged wrongful and negligent act which caused the intestate's death. The intestate was in the employment of the defendant at the time of the accident which caused his death, under the circumstances stated in the opinion of the court. The accident occurred on the 30th August, 1886, and this action was brought on the 7th October, 1886. The original complaint contained two counts, each claiming $25,000 as damages. The first count averred that, on said 30th August, 1886, the defendant was engaged in opening and extending a railroad between Opelika and Goodwater, part of which was a certain switch at or near defendant's bridge over the Tallapoosa river; that in the erection of a structure in the repair of said bridge by defendant, a certain stone was to be used, and was by the defendant placed in position to be hewn down and made thinner, and was

placed near the said switch, close enough to the track to be struck by passing trains; that said intestate, being in the employment of the defendant as a laborer, while said stone was in this position, was put to work on said stone by the supervisor, who was in control of said work, to hew the same thinner; that a train of cars, drawn by an engine, owned and operated by defendant, passed over said switch while said intestate was so engaged in said work, "and negligently, carelessly, and in disregard of the danger to said intestate, struck said stone while he was working on it, dragging it some distance, whereby said intestate was caught between said stone and some timbers near by," badly crushed and injured, and died from the effects of such injuries; that said injuries and loss of life "were caused by the fault and negligence of defendant, and that said intestate, if he had lived, could have maintained an action for said injuries."

The second count was struck out by amendment, and four other counts were added, numbered 3, 4, 5, and 6, respectively. *The 3d count* alleged that, in the erection of a part of the bridge by the defendant, it became necessary to use the stone, and it was placed in position to be properly hewed, and was so placed that trains could ordinarily pass without striking it; that plaintiff's intestate, while the stone was thus placed, was ordered and directed by O. J. Prather to hew it for defendant's use; that Prather was then in defendant's service, and said intestate was bound to conform to his orders and directions, and did conform to them; that while thus employed under the orders of Prather, one of defendant's trains, run by persons employed by defendant, struck the stone by reason of the negligence of the persons in charge of said train, and crushed the intestate so badly that he died from the effects of his injuries; and that "said injuries resulted from said intestate having conformed to the orders and directions aforesaid." *The 4th count* alleged that, on said 30th August, 1886, "plaintiff's intestate was employed and engaged by the defendant in hewing a certain stone near defendant's bridge over the Tallapoosa river, and was crushed by the stone being struck by defendant's train of cars, and so badly injured that he died, by reason of the negligence of defendant's employee who was in charge of said train at the time of said injury; and that said employee had the superintendence of said train intrusted to him, and said injury resulted while he was in the exercise of such superintendence." *The 5th count* alleged, that, while the defendant was

[Columbus & Western Railway Co. v. Bradford.]

operating and running its cars on the railroad between Opelika and Goodwater, and over a switch near the bridge over the Tallapoosa river, and was repairing said bridge, "it became necessary that a certain large stone should be hewed thinner; and defendant's employees, in the regular order of their employment, placed said stone in position so negligently as to place it so near said track that defendant's train, in passing, struck said stone, and crushed said intestate so badly that he died; and said intestate was at the time working said stone by the order or directions of defendant's employee; and it was his duty to conform, and he did conform to said order or direction, and by so conforming was killed." *The 6th count* alleged that, on said 30th August, "while *plaintiff* was standing near defendant's railroad track, said defendant, by its agents, ran its cars along said switch; and said car was so negligently arranged and appointed, that it struck a large stone, and crushed *plaintiff*, so that he died."

The defendant demurred to each of these counts, assigning the following as grounds of demurrer to each: (1.) Because said count shows that plaintiff's intestate directly contributed to the injury complained of, by being and remaining so near the track of defendant's railway as to be struck by a passing train. (2.) "Because it fails to show that said intestate did not know that the stone was placed near enough to the track to be struck by passing trains, or that within a reasonable time after such knowledge he gave (or caused to be given) information thereof to his employer, or to some person superior to himself in the service, or that he was aware that the employer or such superior knew of such negligence.". (3.) Because it fails to show that the defendant, or any one for whose negligence defendant would be liable, placed the stone so close to the track as to be struck by passing trains. (4.) Because there is no allegation that the intestate left any heirs at law surviving him. (5.) Because it shows that the plaintiff can not maintain this action in the capacity in which he sues, the right of action, if any, being in the heirs at law of said intestate. (6.) Because the allegations of negligence on the part of the defendant are too vague and uncertain. (7.) Because each of said counts "fails to aver or set forth that said intestate was ordered or directed by defendant, or by any of defendant's officers or agents, or that it was his duty as the servant or employee of the defendant, to continue at work upon said stone whilst any of defendant's trains were passing it; or that said intes-

37

[Columbus & Western Railway Co. v. Bradford.]

tate was injured because he was working upon said stone; or that he was ignorant of the danger, or by proper care could not have known of the danger of being struck by any passing train; or that he was informed by any of defendant's servants or agents that there was no danger of said stone being struck by a passing train."

The court overruled the demurrers, and the defendant then pleaded not guilty, contributory negligence, and several other special pleas, on all of which issue was joined. The trial resulted, under the rulings of the court below, in a verdict and judgment for the plaintiff, for $8,000. The overruling of the demurrer to the complaint, the charges given, and the refusal of several charges asked by the defendant, are here assigned as error.

GEO. P. HARRISON, for appellant.—(1.) The demurrer to the complaint was well taken, on the several grounds assigned, because neither count brings the case within either clause of the statute.—Code, §§ 2590-92; *Railway Co. v. Holborn*, 84 Ala. 133. (2.) The general affirmative charge for the defendant ought to have been given, because the evidence failed to make out a case of negligence, either at common law, or under the statute.—*Railroad Co. v. Thomas*, 42 Ala. 724; *Smith v. Railroad Co.*, 59 Ala. 245; *Smoot v. Railway Co.*, 67 Ala. 18; *Railroad Co. v. Allen*, 78 Ala. 494; Wood's Master & Servant, 743; 2 Q. B. 439; 8 Amer. & E. R. R. Cases, 504; 52 Iowa, 329; 35 Amer. Rep. 275; *Campbell v. Lunsford*, 83 Ala. 512; *Propst v. Pacific Railway Co.*, 85 Ala. 203.

(3.) The intestate's own contributory negligence was a complete defense to the suit.—*Railroad Co. v. Holborn*, 84 Ala. 133; 77 Amer. Dec. 212; 18 Amer. & E. R. R. Cases, 78; *Tanner v. L. & N. Railroad Co.*, 60 Ala. 621; 69 Ala. 106; 77 Ala. 448; 81 Ala. 185; 95 U. S. 439, 607; 100 Amer. Dec. 613; 6 Ired. N. C. 273; 17 Mass. 1; 19 Pick. 174; 11 Barb. 368; 35 N. Y. 210.

W. D. BULGER, *contra*, cited the following authorities: (1.) As to the sufficiency of the complaint, *Coleman v. Pike County*, 83 Ala. 326; *Stewart v. L. & N. Railroad Co.*, 83 Ala. 495; *Thompson v. Duncan*, 76 Ala. 334; *Railway Co. v. Chambers & Abercrombie*, 79 Ala. 338; 37 Ala. 298. (2.) On the merits, Wharton's Law of Negligence, § 301; *Gothard v. Ala. G. S. Railroad Co.*, 67 Ala. 114; *Morris v.*

*Hall*, 41 Ala. 510; *Cook v. Railroad Co.*, 67 Ala. 533; *Matson v. Maupin*, 75 Ala. 312; *City Council v. Wright*, 72 Ala. 411; 74 Ala. 150; 78 Ala. 494.

McCLELLAN, J.—The liability of a master or employer for injuries to an employee, at common law, was limited to those cases in which the damages claimed resulted from the negligence of the master or employer himself, or some employee higher in authority in the common service than the plaintiff, as distinguished from the negligence of fellow employees, bearing the same or inferior relations to the master as those borne by the party injured. To an action for injuries sustained through the fault of the employer or superior employee, it was a good defense, that the complaining employee had, by failing to exercise due care, contributed to the result of which he complained. . Contributory negligence, which would defeat an action, might have consisted of a failure on the part of the plaintiff, either to reasonably give notice of the defect in appliances used in his employment, or of the negligence of his superiors, if known to him, which produced the injury; or, of a failure, after having given such notice, to quit the service to which such defect or negligence was incident, after a reasonable time had elapsed for its correction. The "Employee's Act" of 1885, now, with slight changes in phraseology and arrangement, constituting sections 2590, 2591 and 2592 of the Code, enlarged the liability of the master, by extending it to cases in which the injury had resulted, under certain circumstances and conditions, from the negligence of fellow employees. The existing law was supposed to fall short of the attainment of justice, in that, and only in that, no action was allowed for the negligence of a certain class of persons. The statutory purpose was to charge the master for the negligence of this class of persons in his employment, in the same manner, under like conditions, and to the same extent as he was before charged for his own negligence, or that of superior employees. In the effectuation of this purpose, it became necessary to go further than a mere declaration of liability for the negligence of the fellow-servants of the plaintiff, and to guard against a construction of that declaration which would give to the employees redress for the fault of their co-employees, to which they would not have been entitled for that of the employer, or of a superior servant of the common master. To this end—to preserve to the master the

same defense against the negligence of his servants, as he had against the consequences of his own carelessness—the legislature declared, that he should not be liable if the complaining employee knew of the defect or negligence which caused the injury, and, not being aware that the fact was already known to the master, or some person superior in authority, failed to communicate his knowledge to the employer, or superior employee. This provision of the statute, therefore, relates to purely defensive matter—the contributory negligence of the plaintiff, which, in this case, was properly omitted from the complaint, and left to be brought to the attention of the court by plea.—*Thompson v. Duncan,* 76 Ala. 334; *M. & E. Railway Co. v. Chambers,* 79 Ala. 338; *Wilson v. L. & N. R. R. Co.,* 85 Ala. 273; *M. & B. Railway Co. v. Holborn,* 84 Ala. 133; *C. & W. Railway Co. v. Bridges, ante,* p. 448.

The demurrers to the third, fourth and fifth counts of the complaint, which are framed under, or with reference to section 2590 of the Code, so far as they are predicated upon the failure of these counts to negative this species of contributory negligence, were properly overruled.

What is here said, however, must not be understood as having any application to the last clause of section 2590, which provides that the master or employer shall not be "liable under sub-division one, unless the defect therein mentioned arose from, or had not been discovered or remedied, owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition." This provision manifestly relates, not to defensive matter, but to the negligence of the defendant, and facts would probably have to be averred in the complaint, if drawn under the first clause of the section, which would show that the defect causing the injury was within these limitations. As this point does not arise in the case at bar, however, it is not decided.

The suit was properly instituted by the personal representative of the deceased employee, and it was unnecessary to allege that the intestate left surviving him any heirs at law. A collateral fact of this character, the existence of which in almost all cases is common knowledge, will be presumed.—*Thomson v. Duncan,* 76 Ala. 334.

The first count of the complaint is good under section

2589 of the Code, in connection with the common-law liability of the master to his servants, and to strangers, for his own negligence. The sixth count, even if some defects, which are so patent as to justify their being treated as clerical misprisions, be not considered, is bad, but none of the demurrers reach the point of its infirmity. The third, fourth and fifth counts, we think, sufficiently aver the facts necessary to constitute liability under one or the other of the last three sub-divisions of section 2590. We, therefore, hold that the action of the court below, in overruling the several demurrers to the complaint, was free from error.

The defendant pleaded the general issue, contributory negligence, and several other special pleas, in denial of a right of recovery under each count of the complaint; and issue was joined on all of these pleas.

The evidence necessary to an understanding of the opinion of the court, may be stated as follows: Plaintiff's intestate was in the employment of the defendant as a stone-mason, under the control of one Prather. At the time of the injury, he was working on a large stone, intended for use in defendant's bridge over the Tallapoosa river. This stone had been, under the direction, and with the assistance of Prather, placed between a spur track of defendant's road and an embankment which was seven or eight feet in height, and nearly perpendicular. The space between the ends of the ties under the track and the foot of the bank, was from four to six feet. This space continued along the length of the spur track, but, at some distance west of the point at which the stone was placed, it was obstructed by timbers. The distance between these timbers and the stone is variously stated by the witnesses, at from eighteen feet to twenty yards. After the stone had been placed in this position, Prather remained there until a train had passed in on the spur track, and out again, without striking the stone. As the train passed and repassed, Prather and the intestate and another employee left the stone, Prather and the other employee going to the other side of the track, and the deceased towards the end of the switch. Prather then left, telling the deceased and the other employee, "You must get out of the way when a train comes in here," as testified by one witness; or, according to another, "Keep out of the way of the train." A half hour afterwards, the train returned, and again passed in on the spur track, going beyond the stone, but without striking it. This time, the other employee, one Oliver, went as before to

the other side of the spur track, and intestate again went back towards the end of the switch. While the train remained on the spur track, the intestate and Oliver resumed work on the stone, and were so engaged when the train started out again; Oliver working on the end of the stone next to the train, and facing west, and the intestate at the other end, facing east towards the approaching train. While thus engaged, and while the train was passing the stone, the intestate remarked to Oliver, according to one witness, "I believe that standard will strike this rock;" or, as stated by another, "The standard is going to hit the stone." Oliver turned, and saw that a standard had slipped partially through its socket, and extended below the body of the car. The standard, when Oliver first saw it, was from twenty to thirty feet from the stone, and the train was moving very slowly. The train proceeded; the standard struck the stone, turned it round, and the intestate was caught between it and a plank standing against the embankment, and so badly crushed that he died a few hours afterwards.

Whatever else the evidence may tend to show, it can not be gainsaid that the deceased and Prather were in the common employment of defendant; that the nature and terms of their respective employments and duties made Prather the superior of Bradford, and bound the latter to obey the orders and directions of the former; that these instructions, with respect to the work on which deceased was engaged at the time of the accident, were that he should prosecute that work except when a train should come in on the spur track, along which the stone had been placed; and that when a train should come in on that track, he should desist from the work, and get out of the way of the cars. These directions could not have been misunderstood. What was meant by them was illustrated by Prather's act in leaving the stone, and crossing over to the other side of the track, when the train first passed in and out. Bradford could not have considered that they were not meant to apply after it had been shown that a train normally appointed would not collide with the stone in passing, because they were given after this had been demonstrated. It was shown that he did not so interpret them, by the fact that he left the place the third time the train passed. It is not pretended that he could not, or did not, see the train as it approached the fourth and last time. It is not hinted that there was any thing whatever to prevent a like compliance with this order on this last occasion, as on

[Columbus & Western Railway Co. v. Bradford.]

the three former ones. On the contrary, the proof is positive, that he could and did see the train, and could without difficulty, or even inconvenience, have complied with the order, and, by compliance, have assured his safety. His failure to do so, under the circumstances, left him in a position in which the defendant owed him no duty of protection, further than would result from the absence of gross negligence, or recklessness, and there is nothing in the case tending to show either. Aside from a consideration of the evidence of contributory negligence, strictly speaking, on the part of the employee, he was where he had no right or business to be. The theory of the complaint, which in every aspect predicates the right of recovery on the assumption that the plaintiff's intestate was rightfully at the place of the accident, therefore, falls to the ground. The case has not been made out; and on these considerations alone, the general charge for the defendant should have been given. *Pfeiffer v. Ringler*, 12 Daly, 437; *Wright v. Rawson*, 52 Iowa, 329.

But our conclusion need not be rested here. The conduct of the plaintiff's intestate was not that of a prudent, careful man. He did not exercise that degree of caution and diligence, which a prudent and careful man, similarly situated, would have exercised. He was warned of the danger. Not only so, but he was ordered away from the point of danger, by one whose directions it was his duty to conform to. There was nothing to prevent his avoiding the danger. His avenue of escape was pointed out to him, and was entirely feasible and easy. Had he availed himself of it, he would not have been injured. His failure to avail himself of it was the result of forgetfulness, inattention, carelessness or recklessness, but for which he would not have been injured, and which, therefore, gross negligence not being imputed to the defendant, contributed proximately to the injury; and the plaintiff being charged with the negligence of his intestate, he was not entitled to recover; and this notwithstanding there may have been negligence on the part of the defendant, or its other employees.—*Lilly v. Fletcher*, 81 Ala. 234; *M. & E. Railway Co. v. Thompson*, 77 Ala. 458; *Campbell v. Lunsford*, 83 Ala. 512; *Woodward Iron Co. v. Jones*, 80 Ala. 123; *Wilson v. L. & N. R. R. Co.*, 85 Ala. 269; *Prather v. R. & D. R. R. Co.*, S. C. Georgia, 1888; *Central R. R. Co. v. Mitchell*, 63 Ga. 173; *Air Line R. R. Co. v. Ray*, 70 Ga. 674.

[Shields v. The State, ex rel. Lacy.]

The evidence in this case, which supports the state of facts from which the conclusion of contributory negligence is drawn, is without contradiction, and free from any adverse inferences. In such case, the question of contributory negligence *vel non* becomes one of law, and is for the decision of the court.—*Wilson v. L. & N. R. R. Co., supra; A. G. S. R. R. Co. v. Jones*, 71 Ala. 487; *E. T., V. & G. R. R. Co. v. Bayliss*, 74 Ala. 150. On this principle, the court below should not have submitted the question of contributory negligence to the jury, but should have instructed them to return a verdict for the defendant, if they believed the evidence. The circuit judge erred, therefore, in refusing to give the general affirmative charge requested by the defendant, and also in refusing to give the second special instruction asked.

The first special charge requested by the defendant was properly refused, because it was based on an assumption as to the directions given by Prather to plaintiff's intestate, which was not supported by the evidence. There was no evidence, that Prather directed Bradford to *leave the cut* when a train came in on the spur track.

That part of the general charge of the court, to which exception was reserved, should not have been given, because there was no evidence to support some of its hypotheses; but the action of the court in this particular, would not operate a reversal of the case.

For the errors pointed out above, the judgment will be reversed, and the cause remanded.