# Bulger *v.* Ross.

## Contest of Probate of Will.

98 267
98 618

1. *Undue influence.*—The undue influence which will defeat a testamentary disposition of property must be such as to overpower the will of the testator, and substitute another's will in its place. It must amount to controlling mental restraint and coercion, destroying the free agency of the testator.

2. *Testamentary capacity.*—Testamentary capacity does not necessarily imply a mind wholly unimpaired. If the testator recollects the property he is about to bequeath, the persons to whom there is a wish to bequeath it, the manner in which he desires to dispose of it and understands the business engaged in, this is testamentary capacity.

3. *Former dispositions by will, competent evidence on contest.*—In the contest of a will on the ground of undue influence exerted by the legatee, who is the surviving husband, it is competent to show similar dispositions of property by will to former husband, by the testatrix.

4. *Letters as evidence of mental impairment.*—Letters written by the testatrix subsequent to the time that her mind was alleged to be impaired, and subsequent to the date of the will, constitute legal testimony to be weighed by the jury in determining whether she possessed the requisite testamentary capacity.

5. *Argumentative charge.*—A charge, some of whose postulates, are stated as facts, when there is only testimony tending to prove them, is rightly refused.

6. *How fact incidentally arising, and not directly raised by issue, may be proved.*—Where an inquiry was not directly raised by the issue in the cause, but arose incidentally, the best evidence of which was in writing, the rule requiring the highest and best evidence does not apply, and it may be shown by parol.

APPEAL from Tallapoosa Probate Court.

Heard before the Hon. JOSEPH H. JOHNSON.

Mrs. Frances Ross died on the 18th of August, 1891, leaving a last will and testament executed on the 18th of January, 1887, in which she appointed her husband, D. A. G. Ross, her sole executor, who offered the will, or alleged will, for probate. It was contested by Mrs. Amanda Bulger and other next of kin, on the grounds of undue influence, fraud, and that testatrix was of unsound mind. It was shown on the trial that Mrs. Ross had first married R. J. Holley, that after his death she married Rowe, who died in 1884, and that she next married D. A. G. Ross, the appellee. It was further shown that she was the principal legatee under the will of her husband, Mr. Holley. After her marriage to Mr. Rowe, she made a will, giving to him a life interest in her property. After marrying the proponent, Mr. Ross, she executed the will now contested, containing almost the same provisions as the previous will, giving a life interest to her husband, Rowe. It was shown that one of the contestants, Mrs. Amanda Bulger, who was a niece of testatrix, had been reared in her house from early childhood, and that for her testatrix cherished a warm affection; that she had promised her husband, Holley, through whom she acquired the greater part of her property, on his death bed, that she, testatrix, would make her will, providing for Amanda, afterwards, Mrs. Bulger, and leave her all the property that testatrix acquired from said Holley; that testatrix, before her marriage to Rowe, had twice called on W. D. Bulger to write her will, but, from some cause, the will was not written; that during the life of Holley, he and his wife, testatrix, together with Mr. and Mrs. Bulger, lived in the same house as a common family; but that after her marriage with Rowe, an estrangement occurred, which lasted during the life-time of Rowe, but after his death, the former cordial relations between the families were restored. That the health of testatrix, after the death of Rowe, was bad, and that her mind was impaired by her disease; that she married Ross on a short courtship; that the intended marriage was kept a secret from her friends and kindred until the day of the marriage; that there was a marriage contract signed between them a few minutes before they were married; that in January, 1887, the will now offered for probate was written by H. A. Garrett, Esq., an attorney who had never attended to business of any sort for Mrs. Ross, and was executed in the presence of witnesses selected by Mr. Ross; that the will, and the making of the will, was unknown

[Bulger v. Ross.]

to Mrs. Ross's relatives until after her death; that Dr. J. M. Watkins was a close friend of Mr. Ross, who had taken some part in bringing about the marriage between Mr. and Mrs. Ross; that he was one of the witnesses to the will of testatrix; that he was her attending physician; that she had repeated attacks or strokes of paralysis in January, June and August, 1891, at which latter date she died; that her health during that time was very bad, and no consulting physician was called in; that Mrs. Ross's father, mother and a brother all lost their minds before they died; that Mr. Ross alone attended upon Mrs. Ross up to the time of her death. The testimony of the proponent tended to show that Mrs. Ross had testamentary capacity at the time the will was made; that her mind was good, and that there was no impairment of her mind until after January, 1891, (the will was executed Jan. 18th, 1887.) Proponent testified that he never talked to testatrix about making her will, or intimated to her how she should make it. The trial was by jury and many witnesses were examined, many questions arose as to the relevancy and legality of evidence. Such as are pertinent to be considered are noted in the opinion of the court. The following charges, among the many asked by the contestants, were refused by the court: 4. "It requires not only mind and memory to make testamentary capacity, but sufficient mind and memory that the testatrix understands the nature of the business engaged in and to comprehend the scope and extent thereof, and to understand the obligations of testatrix, if any are shown to exist, towards any person or persons, and if from all the evidence in this case the jury believe that Mrs. Ross, at the date of making the will, was incapable because of the weakness of her mind to so comprehend these subjects and obligations, then she had not testamentary capacity, and the jury will find for contestant."

7. "When the proponent takes a large benefit under the provisions of the will, and he stands in confidential relations of husband to the testatrix, and it appears that the proponent procured the services of the draftsman and the attendance of the subscribing witnesses who were intimate friends of the proponent, and the instrument was executed in the absence of any near kindred of the testatrix who were not advised of the making of the will, and who were as convenient to testatrix as the persons who were present, the jury are authorized to look upon the transaction with suspicion, and unless the evidence clearly and satisfactorily shows that no undue influence was brought to bear upon the testatrix

in the execution of the instrument, the same can not be upheld, and the jury should so find by their verdict."

8. This charge is substantially the same with charge 7, except it includes further: "and the testatrix disposes of the property largely for the benefit of the proponent, contrary to her previously declared purpose."

9. "If the jury believe from the evidence that the making of the will was not the free act of Mrs. Ross, but was an act growing out of fraud perpetrated on her in procuring the will to be made in violation of her promise to and obligation growing out of Mrs. Ross's contract with Mr. Holley, then the jury will find for the contestants."

10. "While the promise made to Mr. Holley by Mrs. Holley to will Mrs. Bulger the property, although its violation by her is not sufficient within itself to destroy the will, yet if the jury believe such promise was made, the jury will consider it along with the other testimony in determining the issues in this case."

There was a verdict for the proponent, followed by an order or decree of the court that the will be received and admitted to probate. From the decree contestants take this appeal.

W. D. BULGER, and WATTS & SON, for appellants.

HENRY A. GARRETT, for appellee.

STONE, C. J.—The questions presented by this record arose on the application to probate and establish a paper as the last will and testament of Mrs. Frances Ross, late the wife of D. A. G. Ross, the proponent. Mrs. Ross died without descendants. The probate was contested by some of the next of kin, who would share in the distribution if there was an intestacy. The grounds relied on to set aside the will, as we learn from the record, were: *first*, that decedent had not at the time of its execution sufficient mind and memory to make a will; and, *second*, that it was procured to be executed through undue influence exercised by the husband, D. A. G. Ross, who is a beneficiary under it. Fraud in procuring the execution of the will was also assigned as a reason why it should not be admitted to probate, but the record contains no testimony raising that question. The verdict and judgment sustained the validity of the will, and the contestants appeal. We will first consider the question of undue influence.

The undue influence which will overturn or defeat a testamentary disposition of property must be of such a character

[Bulger v. Ross.]

as to overpower the will of the testator, and substitute an-
other's will in its place. It must amount to controlling,
mental restraint and coercion, destroying the free agency of
the testator. In fact, to constitute such undue influence, the
will and wish of the testator must be subordinated and dis-
placed by the superior, dominating will of another. Affec-
tion, or a desire to gratify another's wishes, is not that sort
of coercion which defeats attempted testamentary disposi-
tion. All the better instincts and emotions are left in full
play, and are harmless, unless the will itself—the power of
independent action—is overcome. It ceases to be the will
of the ostensible testator, only when it is shown to have been
brought about by another's superior will.—*Bancroft v. Otis*,
91 Ala. 279; *Moore v. Spier*, 80 Ala. 125; *Leeper v. Taylor*,
47 Ala. 221; *Taylor v. Kelly*, 31 Ala. 59. And the fact that
the testator is the wife of the legatee does not, *per se*, raise
the presumption of fraud or undue influence, so as to shift
the burden of proof on the beneficiary.—*Bancroft v. Otis*,
*supra; Eastis v. Montgomery*, 93 Ala. 293; *Lyons v. Campbell*,
88 Ala. 462; *Johnston v. Armstrong*, 97 Ala. 731.

Testamentary capacity does not necessarily imply a mind
wholly unimpaired. If the testator recollects the property
he or she is about to bequeath, the persons to whom there is
a wish to bequeath it, the manner in which he or she desires
to dispose of it, and understands the business engaged in,
this is testamentary capacity. If these mental qualities are
found to have existed when the will was executed, then great
age, bodily infirmity, or impaired mind, one or all, will not
vitiate the will. The disposing mind and memory, which
the law declares are the tests of testamentary capacity, are
all embodied and expressed in the one power to collect and
retain the elements of the business to be performed, for a
sufficient length of time to perceive and comprehend their
relation to each other.—*O'Donnell v. Rodiger*, 76 Ala. 222;
*Leeper v. Taylor, supra; Bates v. Bates*, 27 Iowa, 110.

We have now stated the two controlling inquiries which
were submitted to the jury for their solution. We have also
declared the legal standard by which testamentary capacity,
and vitiating, undue influence must be measured. On each
of these issues, after proponent proved the execution of the
will, the burden of proof was on the contestants. Any
testimony which proximately shed light on either of these
inquiries was competent.

There was very little, if any proof, positive or circum-
stantial, of any influence exercised by the proponent in pro-
curing the execution of the will. The argument in support

[Bulger v. Ross.]

of the contention that Mrs. Ross was unduly and improperly influenced to sign the will in the form in which it was presented, was drawn entirely from circumstances, none of which, of themselves, tended to convict Mr. Ross of positive, or intentional interference or wrong. There was testimony tending to show that, at one time, testatrix had intended to make other disposition of her property, or the bulk of it, and that one of the contestants would have been largely benefited, if that alleged original purpose had been carried out. The testimony went farther, and tended to show that Mrs. Ross had promised her first husband, Mr. Holley, through whose will she acquired her property, or a part of it, that she would bequeath it to the said contestant, who had been raised by her from her little girlhood. The facts that the said contestant had been raised and cared for by Mrs. Ross, that she had been much attached to her, and the testimony that at one time testratrix intended to provide for her by her will, were, no doubt, relied on as circumstances tending to show that this change of mind was brought about by undue influence. The effect of this presentation of the question was to legalize and let in testimony which might not under other circumstances be legal. It certainly authorized proof that testatrix had changed her mind and testamentary purpose long before Mr. Ross married her, or, as the testimony shows, could have had any interest in the frame of her will. Such testimony was properly received, to be weighed by the jury in determining whether undue influence on the part of Ross brought about the change. Under this principle, it was competent to put in evidence the letter of Mrs. Ross, then Mrs. Rowe, bearing date March 30, 1879. For the same reason, it was competent to prove that, while testatrix was the wife of Mr. Rowe, she had executed a will in which she made provision for her then husband, similar to that made for Ross, complained of in this suit.

Another principle. Letters written by the testatrix were produced in evidence, against the objection and exception of contestants. These letters bore date after the time it was alleged her mind had been impaired by paralysis, and extended to a time after the will bore date. These were legal testimony, to be weighed by the jury in determining the inquiry whether she possessed the requisite testamentary capacity.—*Reynolds v. Adams*, 90 Ill. 134, 146, *et séq.; Bates v. Bates*, 27 Iowa, 110.

The Probate Court did not err in receiving the testimony of Dr. Hitt, and the testimony of the intimate acquaintances of Mrs. Ross, non-professionals, that in their several opin-

[Bulger v. Ross.]

ions she was of sound mind. All this testimony was brought within the rule established in this State.—*In re Carmichael*, 36 Ala. 514, citing the earlier rulings; *Ford v. State*, 71 Ala. 385; *O'Donnell v. Rodiger*, 76 Ala. 222; 7 Amer. & Eng. Encyc. of Law, 504–5; *Tullis v. Kidd*, 12 Ala. 648; *Mobile Life Ins. Co. v. Walker*, 58 Ala. 290.

Mrs. B., one of the contestants, was examined as a witness, and one object of her testimony was to prove that at one time Mrs. Ross, the testatrix, had intended to bequeath her property to her, the witness, and that she had not carried out that intention in the paper offered for probate as her will. This testimony was offered as tending to establish the charge that the will was procured to be signed by undue influence. This witness, it will be remembered, had grown up in the house of the testratrix, as one of her family. She testified, "that she heard testatrix tell witness' father for him to leave Mrs. B (witness) out of any distribution under his will, that she intended witness should have what property she and her husband had. These contestants offered to prove by same witness that she was not a legatee under her father's will. Proponent objected to this, because witness was not competent to prove the same—that the will was the best evidence. The court sustained this objection, and contestants reserved their exception." We hold that the Probate Court erred in this ruling. The question was not one directly raised by the issue in the cause, but came up incidentally. In such case, the rule requiring the highest and best evidence the nature of the question admits of does not apply.—*Graham v. Lockhart*, 8 Ala, 9; *Snodgrass v. Br. Bank*, 25 Ala. 161; *Street v. Nelson*, 67 Ala. 504; *East v. Pace*, 57 Ala. 521; *Winslow v. State*, 76 Ala. 42. This testimony ought to have been received, for it was at least competent on the inquiry whether the instrument expressed the will and wish of the testatrix, or was the mere expression of another's dominating will. It was for the jury to determine its weight and effect.

If it be conceded to be true, as claimed, that testatrix promised her first husband, Mr. Holly, to bequeath her property to Mrs. B., and if it be true that she requested Mrs. B.'s father not to provide for her in his will, because she, testatrix, "intended that (Mrs. B.) should have what property she and her husband had;" and if it be true that, in consequence of this declaration, Mrs. B.'s father made no testamentary provision for his said daughter, but omitted her in the bequests of his property, any or all of these declarations and facts can not, *per se*, invalidate Mrs. Ross'

will, if otherwise legally executed. They may be considered, however, in determining, not whether Mrs. Ross should have kept her promise, for that can not arise on this issue, but, in connection with the other evidence, in determining whether her will was obtained by undue influence.

We find no error in the refusal of the court to give the several charges asked by the contestants. Charge 4 gives undue prominence to "obligations" that may have rested, or been supposed to have rested, on testatrix, to provide for the contestant Mrs. B. If she had incurred such obligation, its breach or non-observance could not, *per se*, furnish ground for withholding probate of the will. If fully established, it could not, in its direct effect, show either a want of mental capacity to make a will, or that the proposed will had been obtained by undue influence. It accomplished its only legitimate function when it received consideration as a circumstance to be weighed in determining whether Mrs. Ross had testamentary capacity, and whether her execution of the paper was obtained by undue influence. This charge was calculated to mislead, and was rightly refused.—3 Brick. Dig. 118, § 110. Charge 7 is an argument, and some of its postulates are stated as facts, when there was only testimony tending to prove them. This charge was rightly refused. And this is equally true of charge 8. Charges 9 and 10 are each faulty, in that they assume as facts certain propositions, while there is only oral testimony tending to prove their truth. The sufficiency of the testimony to establish the facts should have been left to the jury.

The 18 charges given at the request of proponent are simply the expression of well defined principles of law, and the Probate Court did not err in giving either of said charges.

Reversed and remanded.