JOHNSTON, ADM'R, ET AL. v. THE HEIRS OF
HAINESWORTH.

1. The case of Johnston v. Glasscock and wife, [2 Ala. 218,] reviewed and affirmed as to the necessary allegations in a bill filed to set aside a will admitted to probate by the county court.
2. As a general rule, the court of chancery should not direct an issue to be tried at law, unless the evidence is so conflicting as to make it difficult to attain any certain conclusion ; but the statute appears to make the case of a bill filed to set aside a will, an exception to the general rule, and, and to give the chancellor the power to direct an issue whenever he thinks proper.
3. *Devisavit vel non* is an issue in fact.
4. An issue out of chancery ought not to be directed until the answers are in, and the testimony taken.

5. Infant defendants must be served with process, and the rules adopted in 1841 did not materially change the law in this respect.

6. Objections to the time of making a party must be made in the court below, or they cannot be raised in the appellate court.

ERROR to the Chancery Court of Washington.

The bill was filed by the defendants in error, to set aside a nuncupative will. The complainants allege that they are the heirs of James T. Hainesworth, deceased. That Levin Hainesworth, father of James T., departed this life subsequent to their father, leaving a large estate; a daughter, Nancy Philips, who, with their father, were the children of the first marriage; and a widow and four children, the product of the second marriage, all minors. That the orphans' court of Washington has admitted to probate a paper purporting to be the nuncupative will of the said Levin Hainesworth, by which the just claims of complainants and Nancy Philips were entirely excluded.

The bill further charges, that the testimony taken to establish said nuncupative will, does not show why a written will was not prepared and signed by the deceased. Nor do the proceedings of the court show that the persons present were called upon by the said Levin to witness that such was his will; and does not show but that the said nuncupative will was proved within fourteen days after the death of said Levin. That they had no opportunity of contesting the probate of said paper, not having had notice. That the estate was appraised at upwards of $16,000; and that letters of administration, with the will annexed, were granted, in 1833; and prays that James Johnson, the administrator, and the widow and minors be made parties; and further pray a division of the estate of the deceased, according to law, among the heirs.

The will and probate, from the records of the county court of Washington, are as follows:

"The last will and testament of Levin Hainesworth, of the county of Washington and State of Alabama, deceased, declared by him by word of mouth, the 3d Janury, 1833, viz: He gave all his real and personal property, which he died seized or possessed of, or right of recovery in chose or action, or otherwise, to his present wife, Martha Hainesworth, and his four children, which he has by said Martha, his wife, viz: my son Levin Hainesworth,

my daughter Sarah Hainesworth, my son William Hainesworth, and my son John Hainesworth, to be equally divided between them; to share, and share alike, of all the property and rights, as aforesaid, named or stated, to them, their heirs and assigns forever    These were the words spoken by the said deceased, Levin Hainesworth, in his proper mind and memory, in his own house, and on his death-bed, in the presence of us, who have hereto subscribed our names as witnesses, 2d February, 1833.

Daniel Raine,<br>
Joseph Anderson,<br>
William C. Williford.

State of Alabama, Washington county.—Personally came into open court, Daniel Raines, Joseph Anderson and William C. Willford, who being first duly sworn upon the holy Evangelists of Almighty God, upon their oaths did say, that they were present with the within named Levin Hainesworth, now deceased, at his own house, in his last sickness, and but a very short time before his decease, and heard him publish and declare his wish and desire in words to the same effect of those contained in the within instrument, which has since been committed to writing, and to which they have severally subscribed their names as witnesses; and they further state, upon their oaths, that the said Levin Hainesworth was, at the time of uttering said words, of sound mind and memory.

Sworn to in open court, this 11th day of February, 1833."

Subpoenas were executed on the widow and two of the minors, and on the administrator, who was afterwards appointed guardian *ad litem.*

The widow, administrator and *guardian ad litem* answer, stating, in substance, that the will was admitted to probate at the instance of the widow of deceased: that it was established on the proof offered, and which shows that the testator was in his proper mind; that it was in his own house, on his death bed *in extremis*; that no written will was made, because there was no person present capable of writing one, and there was not sufficient time to send for such person; that the complainants and Nancy Philips were excluded, because they had their full share of the estate in the life time of the testator.

Upon the coming in of one of the answers, the court directed

an issue at law to be tried, to ascertain whether the nuncupative will was valid or invalid.

On the 6th of October, 1835, the following agreement was entered:

It is hereby agreed, that the answer required to be filed in this cause by Johnston, administrator, be suspended, and further time granted to file the same up to the time of calling the said cause at the spring term, 1836, of this court; and that the said cause shall be tried upon the issue now made up, and such others as may be made; and either has leave to take testimony so far as relates to the chancery proceedings, on giving requisite notice.

From that time, the cause was continued generally, to await the trial of the issue at law, until the March term, 1841, when the following order was made:

In this case, the defendants, in conformity with the order of the court in chancery, submit the following issues, to wit: "Whether the nuncupative will of Levin Hainesworth, deceased, be valid or invalid"; and the said defendants aver that the said nuncupative will is valid, and this they are ready to verify.

BAYLEY & ERWIN, for defendants.

And the said complainants aver, that said will is invalid, and is no will; and this they pray may be inquired of by the county, &c.

PARSONS & COOPER, for complainants.

Upon this issue, the jury returned a verdict, "That the deceased made no nuncupative will": which was ordered to be certified to the court of chancery.

At the January term, 1843, the court, on motion, previous notice having been given, permitted the complainants to amend their bill, so as to make Nancy Philips a party complainant; and, also, to enter on the record an order, previously made, directing the transcript of the records of the circuit and county courts of Washington to be filed as evidence in the cause.

Upon the hearing, the chancellor decreed, that the verdict of the jury, on the trial of the issue, be established; that the nuncupative will of Levin Hainesworth, and probate thereof, be set aside, and his estate be distributed as in case of intestacy; and directed an account, &c.

The errors assigned are—

1. In not dismissing the bill.

2. In setting aside the will.

3. In decreeing against two of the defendants, on whom subpoenas had not been served.

4. In making Nancy Philips a party after verdict.

5. In sending the issue of *devisavit vel non* to the jury, before any depositions were taken, or before the cause was set for hearing.

John Gayle, for plaintiff in error. At the time this bill was filed, there was no rule of practice adopted as to service of process on infants; and, therefore, the English practice prevailed. It was necessary to execute the process, either on the infant, his parent or guardian, if within the State. The infants in this case may be over 14 years of age; and, therefore, entitled to select their own guardian.

Though a motion to amend, by making a new party, is received with indulgence, yet it is too late after an issue has been submitted to a jury, and their verdict returned. [1 Hoff. C. Pr. 284.]

A court of chancery may, in its discretion, send an issue to be tried by a jury; but where the facts can be sufficiently ascertained by the court, it is an abuse of its discretion to refer it to a jury. [5 J. C. 119; 6 id. 257.] It is never done, unless the evidence is contradictory, or nearly balanced, and a cross examination is necessary. [Hoff. C. Pr. 502, note; 3 Paige, 547; 3 V. & B. 42; 3 Merivale, 167, n.; 18 Vesey, 481; Fonblanque, 498.]

In England, the jurisdiction of the court of chancery over wills is incidental only; but in this State, under our statute, its jurisdiction is complete. If, then, a chancellor can send the case to a jury, where the issue is made up to try the validity of the will, and not to ascertain any particular fact, as whether the testator died at his own residence, or whether the will was made during his last sickness, the very object of the statute will be defeated.

Lastly, there is no equity in the bill. The stating part of the bill alleges but two causes of complaint: that it does not appear from the record of the county court, that there was no written will; and that the persons present were called on to bear witness to the nuncupative will. The relief prayed is, that the estate be distributed according to law—not that the will be set aside.

These are objections, not to the will, but to the record; and it would seem that the relief is expected, not from the defects of the will, but from the omissions of the judge of probate to place on the

record the matters before stated. It is admitted, in Johnson v. Glasscock, [2 Ala. 218,] it was held, that it was not necessary in a bill to set aside a will, for the complainant to allege any thing more than the title by which he has a right to investigate the probate, and a prayer for relief; but he insisted, that the point did not arise in that case, and was, therefore, but a *dictum*, however well it appears to have been considered.

The bill, he contended, should contain such a statement of facts as, if admitted by the defendant, would enable the court to grant the relief prayed. All original bills require to be answered. The answer must be responsive to the bill; and the bill and answer, under our practice, form the issue. By requiring the party to contest the will in chancery, it must be presumed it was intended to require an adherence to the principles of courts of chancery; otherwise it might, with great propriety, have been left with the orphans' court.

The opinion, in that case, rests upon three assumptions —

1. That a probate, in our courts, answers to the probate, in common form, in the ecclesiastical courts.

2. That in the action of ejectment, brought to contest a will of real estate in England, the probate is not *prima facie* evidence in favor of the will.

3. That the bill in chancery here, is to accomplish the object of an ejectment in England, or the probate in solemn form; and, therefore, nothing more is necessary to be set forth in the bill than would be required in proof in the action at law, or the proceedings in the ecclesiastical court—that the complainant is heir or next of kin.

It is true, that the rules of evidence and its effect are the same in both courts; but the mode of proceeding is totally different. Thus, if ejectment be brought by the heir, a *prima facie* case will be made out by showing that he is heir, and if a fraudulent deed be set up, he may impeach it by proof; but if he file a bill to set aside the deed, he must not only show his title to recover, but his bill must set out the circumstances of the fraud. [Story's Eq. Pl. 214.]

The difficulties, suggested in the opinion, that would arise from requiring the plaintiff to prove a negative, furnish no reason why he should not be required to allege it. This is very frequently the case in chancery, as where an instrument has been forged, or the

person making it is of unsound mind, or where the equity consists in a want of notice. In these and similar cases, though the allegation must be made, the burthen of proof is cast on the other party.

He further insisted, that the proof of wills in this State answered to the proof in solemn form in the ecclesastical court. The citation of those interested in the will, the proof by witnesses, &c. all correspond with the probate of a will in solemn form in the ecclesiastical court. [1 Lomax on Ex. 97, 89; Clay's Digest, 303–4.]

If, then, an action of ejectment were brought in this State, to contest a will by the heir, as it undoubtedly might be, [Lomax' Ex'rs, 187; 1 Leigh, 287; 2 Rand. 198; 4 id. 585,] the probate would be conclusive. Or, if a will be offered for probate, and rejected by the probate court, this, as the decision of a competent judicial tribunal, will condemn it forever.

A will of real estate cannot be admitted to probate in England; and that is the reason why the probate cannot be admitted in an action at law.

GIBBONS, *contra.* The subpoena to the mother and her children, is served on her and two of the children only. Afterwards a guardian *ad litem* is appointed for the other two, upon whom a subpoena is served, and who answers. The clear inference is, that the two, not served with process, are of very tender years, and that service of process on them would be nugatory. Besides, the subpoena against them was served on the mother. The answer, put in for them, contests the whole will, and the matter has been litigated for them from that day to the present.

As to the amendment, a bill may be amended at any time by adding parties. [1 Hoff. C. P. 284; 1 Smith's P. 295; 4 John. C. R. 363; Edwards on Parties, 17.]

There certainly cannot be error in sending an issue to be tried at law, when the statute gives express authority to the court to do so.

This case cannot, in principle, be distinguished from that in 2 Ala. 218; and it is not, therefore, necessary to reply further.

ORMOND, J.—This bill was filed previously to the decision of this court in Johnston v. Glascock and wife, [2 Ala. 218.]—

Before the decision in that case, some uncertainty prevailed as to the necessary allegations in a bill contesting the validity of a will, which the county court had admitted to probate. In that case, it was held that it was sufficient for the heir at law, or next of kin, to allege the title by which the right to investigate the probate was derived, and the prayer for relief. The bill in this case, though not very technically drawn, contains substantially these requisites, and is therefore sufficient.

The point just cited, has been controverted with great earnestness by the counsel for the plaintiff in error, but after again considering it, we are satisfied it was correct.

It is supposed that a bill of this description, is like any other bill in chancery, and governed by the same rules. To a certain extent, this is doubtless true—if those claiming under the will, admit its invalidity, it would be unnecessary to proceed further, except to distribute the estate. But if the allegations of the bill are denied, must their correctness be ascertained by the proof of two witnesses? This would certainly defeat the very object the Legislature had in view—a new trial of the validity of the will—it is in effect, a mere offering of the will again for probate, by those claiming under it, and upon them the burden lies, of proving it.—We think it, therefore, clear, that the quantity of proof necessary to be adduced to support the original probate, cannot depend on the answer of those claiming under the contested will. If then the denial in the answer of the allegations of the bill would not affect the proof necessary to be adduced, it goes far to show that such allegations are unnecessary; the whole design of the legislature being to open the probate of wills in certain cases. and to require those claiming under them, again to establish their validity.

It is also urged, that the issue which in this case was directed to be tried by a jury, was improper; that the jury could not pass on the entire question of the validity of the will, although it might settle or ascertain some disputed fact.

The general question of issues out of chancery. was expounded by this court in Kennedy v. Kennedy, [2 Ala. 571,] in which the right and the duty of a court of chancery to determine questions of fact, is explicitly asserted; and that it should not award an issue to be tried at law, unless the proof was so conflicting as to make it difficult to attain any certain conclusion. The case of

an heir at law, contesting the validity of a will, has, however, in England, always constituted an exception to this rule. [2 Ala. Rep. 625, and authorities there cited.] The statute, too, under which this proceeding was had, gives the chancellor the power of directing an issue in fact, whenever he thinks proper, and we think it cannot be questioned that *devisavit vel non* would be an issue in fact, within the meaning of the statute.

The objection that the issue was directed before the testimony in the cause was taken, and even before all the answers were in, is a more serious one. Until the testimony is taken, it cannot be known whether any conflict will arise, so as to make it necessary to refer the decision to a jury, and it is premature to direct one previously. [Hoff. C. P. 502.] We do not see that this case forms any exception to the rule. If, however, this were the only error in the record, it might perhaps be cured by the subsequent agreement of the parties.

The omission to serve the process on two of the infant defendants, is a fatal error. The rule of chancery practice, [Clay's Digest, 612,] requires all subpoenas on resident infant defendants over fourteen years of age, to be executed on them personally, and if under that age, upon those who have the charge of them. These rules were adopted in 1841, many years after these proceedings took place, but they are not materially variant from the law, as it existed previously. [Walker v. Hallett, 1 Ala. Rep. 390.] Here the subpoena was not executed on two of the infants, but as it was executed on their mother. it is insisted that we must presume they were under fourteen years of age. No presumption or intendments can be made against infants. For any thing shown to the contrary, they may have been over fourteen years of age, and indeed it does not appear by the record, that they have had constructive notice by a service of the subpoena on any one having the custody of their persons.

The amendment of the bill by making Nancy Philips a party after verdict upon the issue at law, was an irregularity, but no advantage can be taken of it in this court, as it does not appear to have been objected to in the court below, which will be held to be a waiver. This was so decided in the cases of Batre v. Auze's heirs, [5 Ala. Rep. 173,] and Erwin v. Ferguson, [ib. 158.]

Let the decree be reversed, and the cause remanded for further proceedings.