# Lyons *v.* Campbell.

## *Bill in Equity Contesting Probate of Will.*

1. *Contesting will in equity; statement of grounds of contest.*—Under the statutory provisions now in force (Code, §§ 1989, 2000), and which have been in force for more than thirty years, when the probate of a will is contested in the Probate 'Court, the grounds of contest must be distinctly stated; and the same rule must apply when the probate is afterwards assailed by bill in equity. (*Johnston v. Glasscock*, 2 Ala. 218, and *Johnston v. Hainesworth*, 6 Ala. 443, declared modified by these statutory provisions.)

2. *Partial contest.*—Whether the contest of a will is made in the Probate Court, or afterwards by bill in equity, it may be confined to a part of the will, or particular legacies only, leaving the others to stand as valid.

3. *Fraud and undue influence, as grounds of contest; burden of proof.* The mere fact that a will was written by a person who takes a benefit under it, is not sufficient to invalidate it; yet, if the bequest to him is large, and especially when he is a stranger to the testator's blood, the instrument will be scrutinized with suspicion, proof of testamentary capacity and formal execution merely will not be sufficient to uphold it, but he will be required to show, clearly and satisfactorily, that the testator knew its contents.

4. *Same.*—Undue influence, such as will invalidate a will, must in a measure destroy the testator's free agency, and cause him to dispose of his property contrary to his desire; yet, where a confidential relation, such as principal and agent, existed between the testator and the beneficiary under the will, and continued to the testator's death, the presumption of undue influence arises, and requires affirmative proof to overcome it.

5. *Same; case at bar.*—The bill in this case alleged that the residuary legatee, who was also appointed executor, and relieved from giving bond, was for several years the trusted agent and confidential adviser of the testatrix; that he was a stranger to her blood, and had ingratiated himself with her for selfish purposes; that she was eighty years old, simple-minded, timid, shrinking from business transactions, and disposed to confide implicitly in one friend and adviser, having outlived her husband, brothers and sisters, and her children; that he had the will written by his son, from his own directions, and induced the testatrix to sign it, without either reading or hearing it read, and without advice or consultation with any other person, under the false impres-

[Lyons v. Campbell.]

sion, purposely and fraudulently created by him, that the residuary legacy would not exceed $2,000, when in fact it exceeded $20,000; and that he also induced her to give legacies, amounting to about $40,000, to a favorite minister of her church and his family, by making her believe that it was necessary or expedient to do so in order to prevent them from contesting the will, and attempting to establish a prior will, executed twenty years before, by which she had bequeathed to them $100,000 or more, and with which she had latterly expressed dissatisfaction. *Held*, that these allegations were sufficient to invalidate the residuary legacy, but not sufficient to invalidate the other bequests.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. THOS. COBBS.

The bill in this case was filed on the 25th February, 1887, by Mrs. Mary A. Lyons and three others, as heirs at law and next of kin of Mrs. Mary P. Rice, deceased, against Archibald Campbell and others; and sought to set aside the probate of Mrs. Rice's will, on the ground that it was procured by fraud and undue influence on the part of said Campbell, who was the residuary legatee, and was also appointed as executor, and relieved from giving bond. Mrs. Rice died in August, 1885, and left no surviving husband, children, or their descendants; her next of kin being eleven cousins, four of whom joined as complainants in the bill, and the others were made defendants. Campbell was made a defendant individually and as executor, and all the other devisees and legatees under the will were also made defendants. The will was dated September 27th, 1884, but a codicil was added under date of October 24th; and both together were admitted to probate, November 4th, 1885, on proof by the subscribing witnesses. The grounds on which the validity of the will was assailed, as alleged in the bill, are stated in the opinion of the court. A demurrer to the bill was filed by Campbell, assigning numerous specific grounds of demurrer; and a separate demurrer was filed by Beirne Lay and others, called in the opinion the "Lay legatees." The chancellor sustained each of these demurrers, and the complainants appeal, assigning his decree as error.

F. P. WARD, E. W. GODBEY, and D. D. SHELBY, for the appellants.— (1.) In a bill to set aside the probate of a will, it is only necessary to allege the title by which complainant claims the right to investigate the probate, and add a prayer for relief; while the answer must aver every fact and circumstance necessary to make a good will.—*Johnston v. Glasscock*, 2 Ala. 218; *Johnston v. Hainesworth*, 6 Ala. 443; *Kumpe v. Coons*, 63 Ala. 448; *Rogers v. Thomas*, 1 B. Monroe, 370;

48 Conn. 202. (2.) When the probate of a will is contested in the Probate Court, the statute requires that the grounds of contest shall be specified.—Code, § 1989. But this statute does not change the rules of pleading in equity, as laid down in the cases above cited; and even if the statute should be held applicable, the allegations of the bill are sufficient to meet its requirements, showing the existence of a confidential relation between the testatrix and Campbell, and alleging facts from which the law infers fraud and undue influence on his part.—*Huguenin v. Baseley*, 2 L. C. Eq. 1276; *Hill v. Barge*, 12 Ala. 687; *Boyd v. Boyd*, 16 P. F. Smith, 283. (3.) Whether the other legatees participated in the fraud or undue influence by which the bequests to them were procured, is immaterial—they can not retain a benefit obtained by or through the fraud of another.—*Bridgman v. Green*, 2 Vesey, 627; *Cofer v. Moore*, 87 Ala. 705. (4.) A will may be good in part, and bad in part; and one part of it may be admitted to probate and allowed to stand, while another part is rejected.—*Florey v. Florey*, 24 Ala. 241; *Hall v. Hall*, 38 Ala. 131; *Skeggs v. Horton*, 82 Ala. 352; *Harrison's Appeal*, 48 Conn. 202; 1 Redf. Wills, 519.

LAWRENCE COOPER, for appellee Campbell.—(1.) The will in this case was duly proved, and admitted to probate without contest, on the testimony of the attesting witnesses; and the bill, with its amendments, while admitting the testamentary capacity of the testatrix and the legal execution of the will, seeks to set aside the probate, at least partially, on general allegations of fraud and undue influence on the part of the executor and residuary legatee. The bill shows that the testatrix had long contemplated a testamentary disposition of her entire estate, and had made a will more than twenty years before, in which she did not mention them, even if she was aware of their existence, which does not appear. They do not now impeach her testamentary capacity, but seek to set aside her will partially, on allegations of fraud and undue influence, which, though charged against one legatee only, affect the entire will; and they declare a willingness that the other legacies shall stand. The law gives them no such power. In the Probate Court, they might have contested one or more legacies only (*Florey v. Florey*, 24 Ala. 241); but, in equity, after the will has been duly admitted to probate, it must stand or fall in its entirety.

[Lyons v. Campbell.]

All the allegations of fraud and undue influence are made against one legatee only, but they equally affect all the provisions of the will; and the validity of some of its provisions being admitted, all must be upheld. (2.) General charges of fraud and undue influence, not supported by a specification of particular facts, are not sufficient; and the particular facts averred do not bring the case within the rule laid down by the adjudged cases.—*Donegan v. Wade*, 70 Ala. 501; *Gilmer v. Wallace*, 75 Ala. 222; *Shipman v. Furniss*, 69 Ala. 555; *Daniel v. Hill*, 52 Ala. 430; *Gilbert v. Gilbert*, 22 Ala. 529; *Leverett v. Carlisle*, 19 Ala. 80; *Dunlap v. Robinson*, 28 Ala. 607; *Leeper v. Leeper*, 47 Ala. 221; 1 Jarm. Wills, 133; 70 N. Y. 387; 118 Penn. St. 259; *Herster v. Herster*, 122 Penn. St. 239; 7 Wright, Penn. 46; 1 Redf. Wills, 516; Schouler on Wills, § 230; 82 Ill. 149; 49 Ark. 367.

W. L. CLAY, and L. W. DAY, for the "Lay legatees," cited *Florey v. Florey*, 24 Ala. 241; *Leverett v. Carlisle*, 19 Ala. 80; *Gilbert v. Gilbert*, 22 Ala. 529; *Taylor v. Kelly*, 31 Ala. 59; *Dunlap v. Robinson*, 28 Ala. 100; *Clay v. Dennis*, 3 Ala. 375; *Flewellen v. Crane*, 58 Ala. 627; 7 Cal. 206; 16 Amer. Dec. 260.

CLOPTON, J.—The statute which prevailed in this State prior to the adoption of the Code of 1852 provided: "Within five years from the time of the first probate of any will, any person interested in such will may, by bill in chancery, contest the validity of the same, and the court of chancery may thereupon direct an issue or issues in fact to be tried by a jury as in other cases; and in all such trials, the certificate of the oath of the witnesses, at the time of taking the original probate, shall be admitted as evidence to the jury, to have such weight as they may think it deserves." Clay's Digest, 598. In *Johnston v. Glasscock*, 2 Ala. 218, this statute was construed, and it was held that it provided a new mode by which the heir at law, or the next of kin, can contest the will, in such manner that one suit will be conclusive and final; and for this purpose the court of chancery was invested with the jurisdiction, and authorized to call in aid the assistance of a jury, as in other cases; which suit in chancery was given in place of the proof in solemn form when the will was of personal property, as practiced by the Ecclesiastical courts, and of the action of ejectment in a court

30

of common law, when the will was of real estate. The person claiming under the will stood in the situation of an actor, and was bound to support the will affimatively. It was said, "It is true that, under the statute we are considering, the heir at law, or next of kin, is necessarily the complainant; but his condition is such, that after establishing his heirship, or kinship, he occupies precisely the same position as the heir at law, when he is a plaintiff in an ejectment, or the next of kin, when he seeks to call in the probate, in common form, of a will. Such being the condition of a complainant under the statute, nothing is necessary in his bill, more than to allege the title by which he has the right to investigate the probate, and a prayer for relief." This construction of the statute was re-affirmed in *Johnston v. Hainesworth*, 6 Ala. 443.

The present statute provides: "Any person interested in any will, who has not contested the same under the provisions of this article, may, at any time within five years after the admission of such will to probate in this State, contest the validity of the same by bill in chancery, in the district in which such will was probated, or in the district in which a material defendant resides." The Chancery Court is authorized, in such case, to direct an issue to be tried by a jury, and on the trial by the jury, or the hearing before the chancellor, the testimony of the witnesses reduced to writing by the judge of probate, when the will is first admitted to probate, is evidence to be considered by the chancellor or jury.—Code, 1886, §§ 2000, 2001, 1982. These sections were first incorporated in the Code of 1852, at which time the statutes now constituting sections 1989 to 1999 of the Code of 1886 were adopted, providing for the contest of any will propounded for probate in the Probate Court, and regulating the proceedings on such contest. Section 1989 provides: "A will, before the probate thereof, may be contested by any person interested therein, or by any person who, if the testator had died intestate, would have been an heir or distributee of the estate, by filing in the court where it is offered for probate allegations in writing, that the will was not duly executed, or of the unsoundness of mind of the testator, or of any other valid objection thereto; and thereupon an issue must be made up, under the direction of the court, between the person making the application as plaintiff, and the person contesting the validity of the will

as defendant; and such issue must, on application of either party, be tried by a jury."

By the statute under which *Johnston v. Glasscock* was decided, the clerk was required, on application for the probate of any will, or for letters of administration, to issue citation, requiring the sheriff to summon the widow or next of kin of the deceased to appear at some return day in the process named, and show if they have any thing to allege against such application; but no detailed proceedings for the contest of a will were provided, and the application was the same, whether to probate a will, or for letters of administration. And though it is said, in *Kumpe v. Coons*, 63 Ala. 448, in which the will was made after section 1989 was first enacted, that the character of the suit is not changed, if there is no contest in the Probate Court, and the heirs at law or next of kin resort to the statutory remedy, which is the substitute for proof of the will in solemn form, or for the action of ejectment, if the will is of real estate, we do not understand by this, it was intended to assert that it was not necessary that any valid objection should be stated in the bill.    And if it was intended in *Johnston v. Glasscock* that all that was necessary was to allege the heirship, or next of kinship, the rule therein declared must be regarded as modified by the present statute. A material and controlling change has been made.    A decree in the Probate Court, establishing a will on contestation, is final and conclusive, as against all persons who joined therein; those only who do not contest in that court can resort to chancery.    To contest in the Probate Court, it is necessary to state some valid objection to the will; and the same rule applies when the will is contested in chancery. The heir or distributee must not only allege his title, but also some valid ground of objection.    It may be, however, in the same general terms as when the contest is inaugurated in the Probate Court; otherwise, he will be permitted to take an advantage by declining the contest in the Probate Court, and invoking the chancery jurisdiction.    This requirement sound equity pleading demands.

But we can not assent to the proposition contended for by counsel, that a bill is without equity, which seeks to have a certain legacy declared invalid, because procured by fraud and undue influence, at the same time affirming other legacies.    The contention is, that a party adversely interested, if he would contest one or more items, leaving the remainder of the will unaffected, must contest in the Probate Court;

[Lyons v. Campbell.]

and when the contest is in chancery, the will must stand or fall as an entirety. When the investigation is in chancery, the same general rules prevail as when the contest is in the Probate Court, and the same general laws are applicable in both courts, as when a will is probated in the Ecclesiastical courts in solemn form, only changed so as to be adapted to the particular remedies. It is well settled, that where a legacy has been given through undue influence, it does not necessarily have the effect of rendering the whole will void. *Florey v. Florey,* 24 Ala. 241. In chancery, equally as well as in the Probate Court, there may be valid reasons for contesting one or more items, leaving the remainder of the will unaffected. If not allowed this privilege or right, the heir or distributee would oftentimes be debarred from contesting such items, though procured by fraud or undue influence, because unable to show the entire will to be tainted thereby. Such denial would violate the principles of natural justice, and under the clauses of the will which are the result of the free will of the testator furnish protection to fraud or undue importunity on the part of one legatee.

Appellants seek by the bill to contest certain specified items of the will of Mary P. Rice. In considering the sufficiency of the objections to these legacies as stated in the bill, we must assume their truth, being on demurrer. The bill alleges, that the testatrix was about eighty years old, had lost a husband and a large family of children, and was without brother or sister or descendants; that she had always been simple-minded, though sensible, of a timid and shy nature, shrinking from the responsibility of business transactions, and disposed to select some one to make and look up to as her sole business agent and confidential adviser; at the time of the death of her previous business agent, she occupied rooms in a tenement house, and soon thereafter, defendant Campbell, who is the residuary legatee, rented other rooms in the same building, occupying them with his family, for about two years; that during their residence in this building, he ingratiated himself with her, became her sole business agent and confidential adviser, and acquired such influence over her that she would follow his advice in business matters implicitly; that Campbell had the will and codicil written by his son, from his own directions, and induced the testatrix to sign them, without either having been read by or to her, and without advice from, or consultation with any relative, friend or counsel, under the false impres-

sion, purposely and fraudulently produced by him, that the residuary legacy would not exceed two thousand dollars, when in fact it exceeded ten times that amount.

The salient facts, as charged in the bill, are: (1) that Campbell ingratiated himself into the favor of the testatrix; (2) that he sustained to her the relation of trusted agent and confidential adviser; (3) that he procured the will to be written by his son, from his own directions, and that testatrix did not read, nor hear it read; (4) misrepresentation as to the amount of the residuary legacy. While the mere fact that a will is written by a party who takes a benefit under it, does not invalidate it; yet if the benefit is large, and especially if the beneficiary is a stranger to the testator's blood, the instrument will be scrutinized with suspicion, and clear proof that the testator knew its contents will be required to admit it to probate. Proof of testamentary capacity and of formal execution are insufficient. Because of its accuracy and guarded limitations, we quote the statement of the rule as made by Baron Parke: "If a party writes or prepares a will, under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court, and calls upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce, unless the suspicion is removed, and it is judicially satisfied that the paper propounded does express the true will of the deceased."—*Barry* v. *Butlin,* 1 Curt. 637. Evidence in the shape of instructions for the preparation of the will, or reading, or hearing it read, is the most satisfactory, but not the only precise species of evidence of the testator's knowledge of the will—circumstantial evidence may be sufficient; but the party claiming under the will, whatever mode of proof he may adopt, must satisfactorily establish that the testator knew the contents; the *onus probandi* is on him.

It is true, that the undue influence which will invalidate a will must be such as, in some measure, destroys the free agency of the testator, and causes him to dispose of his property contrary to his desire. The question here is not as to the quantity of proof requisite to establish undue influence, but one of inference from the particular facts averred. Whenever a confidential relation exists, such as principal and agent, during the lifetime of the deceased, continuing to his death, and the agent is a favored legatee under the will, the presumption or inference is that, by improper acts or

circumvention—by the exercise of some undue influence—the testator was induced to bestow the gift or legacy contrary to his desire and free will; and the burden of proof is cast on the legatee, to show that the will was the result of his own volition, and not procured by fraud or undue influence. When the allegations of the bill, as to the confidential relations between Campbell and testatrix, the procurement of the writing of the will, and the representation as to the amount of the residuary legacy, in connection with the extreme age and timidity of the testatrix, are considered, they are calculated to excite vigilance on the part of the court, and call for satisfactory proof in rebuttal, or explanation, or disproof. Had deceees *pro confesso* been rendered against the residuary legatee, or should he decline to offer any evidence in avoidance of the inferences which the law draws from the foregoing facts, the court would unhesitatingly pronounce against the validity of the residuary legacy. Sufficient grounds are shown on which to invoke the jurisdiction of chancery.—*Hill v. Barge*, 12 Ala. 687; *Daniel v. Hill*, 52 Ala. 430; *Waddell v. Lanier*, 67 Ala. 347; *Shipman v. Furniss*, 69 Ala. 555; *Moore v. Spier*, 80 Ala. 129; 71 Amer. Dec. 129.

Though it may be sufficient, in a bill of this kind, to charge that the will was the product of undue influence exercised by a named person, dispensing with allegations as to the proofs; yet, when the bill avers special facts, it becomes the duty of the court to determine whether from such special facts undue influence is established, or may be inferred. This observation applies to the several legacies given to the persons who may be classed as the "Lay legatees." It appears from the bill, that in 1862 the testatrix made a will, bequeathing to Bishop Lay, his wife and children, more than one hundred thousand dollars. The bill charges that Bishop Lay, who was the rector of the church in which she was a communicant, being about to remove from Alabama, induced her to make the will, suggested its provisions, and had it written, and soon thereafter removed from the State. So far as appears from the bill, during an absence of nearly twenty years, he visited the testatrix but once. Construing the bill most strongly against the complainants, the allegation is, not that he exercised undue influence, but, at most, used earnest solicitations. The will made in 1862 remained unrevoked and unaltered, save a codicil giving a small bequest to a servant, until the one in controversy was made. Under these

[Lyons v. Campbell.]

circumstances, it is reasonable to presume that all improper influence was removed, and she well knew the disposition she had made of her property.

It is true, the bill further avers, that she had expressed dissatisfaction with the former will, and announced her intention to revoke it, should she outlive Bishop Lay; but in what respects, and to what extent she was dissatisfied, is not averred. It is averred that Campbell's purpose, in suggesting the bequests to the Lays severally, was partly to enable him to deceive Mrs. Rice, as to the amount he would receive as residuary legatee, and partly to conciliate the Lays, and prevent the will of 1862 from being propounded for probate. His interest as residuary legatee was to diminish the amount of the legacies to the Lays, so as to increase his own. If, in accomplishing this purpose, he used arguments by which to convince the testatrix of the expediency of giving legacies to the Lays in order to prevent the first will being propounded for probate, and she comprehended the disposition she was making of her property in this regard, which is not negatived by the bill, this does not constitute such undue influence in obtaining the legacies as would invalidate them. The bill simply alleges that Campbell suggested to her the gift of legacies to the Lays. It does not aver that he communicated to her his motive or purpose for doing so. A mere suggestion does not amount to undue influence. With the exception of Bishop Lay's connection with the first will, there is no allegation that either of the "Lay legatees" ever attempted to use any influence over the testatrix, or encouraged, or knew of any being used by any other person in their favor. The legacies were diminished from over one hundred thousand dollars, given in the will of 1862, to less than forty thousand in the will in controversy. This does not savor of undue influence. We are of opinion, that the averments of the bill do not authorize any inference that these legacies were obtained by the exercise of undue influence, in the legal sense of the term, and are insufficient to call upon these legatees to contest them in chancery.

The decree, so far as relates to the demurrers of Beirne Lay and others, is affirmed; but reversed in all other respects, and a decree here rendered overruling the demurrers of Archibald Campbell.