Herein is presented an appeal from a decree and order affirming the county county of Seminole county in admitting to probate the last will of one Mimey, a half-blood Seminole Indian allottee, wherein one J. Coody Johnson, a negro lawyer and non-citizen of the Seminole Indian Tribe, was made the principal beneficiary.
The will is dated January 12, 1921, and Mimey died about January 30, 1921. The only property involved is a homestead allotment of the testatrix consisting of 40 acres of land *Page 86 
in Seminole county. It is suggested that probably the will was admitted to probate about March or April, 1921, and that this proceeding is merely one to correct some defect or error in the former proceeding, but no part of those proceedings, if any there be, are shown in the record. James Brazell, who purchased an interest in the land from J. Coody Johnson, commenced these proceedings in the comity court of Seminole county, October 17, 1927, by petition for probate of the will, in which it was alleged that J. Coody Johnson, the person named in the will as executor, departed this life on or about February 27, 1927.
George Fish, as guardian of persons and estates of Lindy Fish, Johnson Fish, and Lena Fish, minors, and grandchildren of Mimey, protested and objected to the admission of the will to probate. These minor children are alleged to be the sole heirs at law of Mimey, and but for the will would inherit the land involved. The formal protest is quite lengthy, and in substance alleges: That Mimey at the date of the will was an old woman, sick in body and feeble in mind; that she was ignorant, without business experience, and was unable to read or write any language, and could speak only the Creek or Muskogee language, her native tongue; that J. Coody Johnson, the sole devisee, was a man of great wealth, possessing great and unusual influence among the primitive people of that community, and was in the habit of taking wills to his benefit from members of the Seminole and Creek Indian Nations; that the will was obtained by duress, fraud, extortion, and undue influence; that the will was not executed in any respect as provided by law; that said Mimey did not have sufficient understanding to know and understand the extent of her estate and the relation she bore to the natural objects of her charity and their relation to her; that J. Coody Johnson was the attorney and trusted legal adviser of Mimey, and as such advised her to her detriment and to the detriment of the natural objects of her bounty and to his own advantage; that he was of a different race and blood from the testatrix and was not related to her in any way.
The will, after directing the payment of debts and funeral expenses, gave and bequeathed to J. Coody Johnson the 40-acre homestead allotment; directed that he pay to each of the grandchildren, if living, the sum of $25, and the fourth and fifth clauses of the will provided:
"It is further agreed that my devisee J. Coody Johnson shall pay me during my lifetime the sum of $12.50, per week or its equivalent in groceries. That he shall furnish a doctor for me when necessary and shall pay his expense and all the expense of the necessary medicine.
"I further direct that the said J. Coody Johnson shall bury me decently and shall pay the expenses thereof."
The will was signed by Mimey as follows:
"Mimey (her X mark)
"I certify that I wrote the name of Mimey to this instrument at her request and in her presence.
"Houston Miller,
"Lincoln Burton."
The attesting clause was in regular form and signed by Houston Miller and Lincoln Burton of Wewoka, Okla., as witnesses.
At the hearing in the county court, the will was admitted to probate and the protestants appealed to the district court, where a hearing was had de novo. After the appeal was perfected in the district court, an order was entered appointing Warren R. Phillips as guardian ad litem of said minors to defend and represent their interests in said litigation. He filed in the district court a response or protest denying at length the execution of the will and adopting and reiterating the allegations of the original and amended protest filed by George Fish as guardian. Trial was had in the district court without a jury, resulting in the decree and order. Protestants appeal.
Three questions are presented. It is first contended:
"That where, as here, the testatrix is an old Indian woman who does not understand the English language, and the will made an unnatural disposition of her estate to a stranger in blood and in race, that more than proof of the formal execution of the will is required, and that the plaintiff failed to satisfactorily establish that the testatrix knew the contents or effect of the will. There is a presumption against such a will which must be overcome by proof on the part of those who seek its probate."
Under this contention it is asserted that nothing but formal proof of the execution of the will was made and that this is not sufficient to show that the testatrix knew the contents and effect of the will. Protestants did not offer any evidence in support of their protest, but apparently relied upon the evidence, or want thereof, offered by the proponent. The only witnesses who testified were Houston Miller and Lincoln Burton, the two subscribing witnesses to the will. Houston Miller, after identifying his own signature as a witness to the will, testified he wrote the name of Mimey to the will *Page 87 
at her request and in her presence; that he signed his name as a witness in her presence and at her request, and in the presence of Lincoln Burton, the other subscribing witness; that Lincoln Burton signed his name to the will as a witness at the request and in the presence of Mimey and in the presence of Miller; that at the time the will was so signed and in the presence of both subscribing witnesses, Mimey declared the instrument to be her last will and testament. He also testified that at the time the will was executed, H.F. Davis, the then county judge of Seminole county, Miss Florence Etheridge, the then federal probate attorney, J. Coody Johnson, his stenographer, and Lincoln Burton's wife and the two subscribing witnesses were all present in the home of Mimey where the will was prepared and executed. Lincoln Burton's testimony was substantially the same as Miller's and in addition he testified that he spoke the Seminole language and also spoke English some; that he was present when the will was prepared and that Mimey did not speak the English language; that Houston Miller interpreted when the will was made; that the will was read over to Mimey by Houston Miller after it was prepared. That the witness had since read the will and he thought Houston Miller correctly interpreted its contents to Mimey after it was prepared; that Mimey was sick at the time and had been for several weeks and that she had been a cripple a long time; that she stated that the reason she made the will to J. Coody Johnson was that she needed certain help, "grocery bills and doctor bills, etc."; that the will was made just as she requested it and was written in her presence and at her request; that Mimey asked him to come to her house; that after he got there she sent him to get Coody, and as to how the will was actually prepared and put in writing, he testified:
"Q. And who wrote this will there at the time? A. The stenographer. Q. That is the girl, Jennie Davidson, that you are talking about? A. Yes. sir. Q. Who dictated the will? Who told the stenographer what to write down? A. Why, Mimey told Houston and Houston told the stenographer. Q. Mimey told Houston and Houston told the stenographer? A. Yes, sir."
This we think plainly shows that the contention of protestants that the proponent failed to satisfactorily establish that the testatrix knew the contents and effect of the will can hardly be sustained. It shows that she clearly understood that Coody Johnson was to pay her $12.50 per week or its equivalent in groceries during her lifetime and that he was to furnish her a doctor when necessary and pay his expenses and the expense of necessary medicine. Plaintiffs in error cite the rule with respect to the preparation of wills as contained in Alexander on Wills, as follows:
"When the testator writes or dictates a will which is rational in substance and in form, such a fact is strongly in favor of his mental competency. But where one who prepares the instrument or superintends its execution is himself a beneficiary under the will, his conduct must be viewed and scrutinized as that of an interested party. 'Propriety and delicacy would infer that he should not conduct the transaction; and, a fortiori, in a case where he is the confidential attorney of the deceased, and where the benefit conferred is to a considerable amount.' In such a case, the burden of proof would be on the proponent to establish the testamentary act with greater particularity than would be required where the will was prepared by and executed in the presence of disinterested persons."
To the same effect is the citation from 1 Underhill, Law on Wills, sec. 137. Our attention is also called to Welch v. Barnett, 34 Okla. 166, 125 P. 472, where the following from Lyons v. Campbell, 88 Ala. 462, is quoted with approval:
"While the mere fact that a will is written by a party who takes a benefit under it does not invalidate it, yet, if the benefit is large, and especially if the beneficiary is a stranger to the testator's blood, the instrument will be scrutinized with suspicion, and clear proof that the testator knew its contents will be required to admit it to probate. Proof of testamentary capacity and of formal execution are insufficient."
A number of other cases are cited to the same general effect. With the rule there announced, we have no fault to find. The court in all such cases should be vigilant and jealous in examining the evidence in support of the instrument and should not hesitate to deny probate until satisfied the true will of the testator is expressed therein. In this connection it may be noted that what was said in Lyons v. Campbell, supra, was in connection with the sufficiency of the allegations of the protest rather than evidence in support thereof. A careful examination of the record, we think, will disclose that the instant case does not come within the rules discussed in the foregoing cases. It is not shown that the will was written by J. Coody Johnson, nor under his direction or supervision. It is not shown that he by word or act suggested the terms of the will or any of them. It is shown that both the county judge and federal probate attorney were present when the will was written. The presence of the county judge and *Page 88 
the federal probate attorney raises a strong inference that no undue influence was used. Furthermore, the evidence affirmatively shows that the testatrix had the will read and explained to her and she in fact dictated the will to the interpreter, who in turn translated and dictated to the stenographer. The witness Lincoln Burton was present and understood the language of the testatrix and testified that Houston Miller, the interpreter, fairly and honestly translated what was said. Furthermore, the record does not disclose that J. Coody Johnson was acting or ever did act as the attorney for the testatrix.
We think the evidence sufficient to show that the testatrix knew and understood the contents and effect of the will.
It is next contended that Houston Miller was not competent to act as attesting witness, which would, in effect, allow him to attest his own acts, since he testified that he wrote the name of Mimey to the will. The only authority cited in support of this contention is Donavan v. St. Anthony Elevator Co., 8 N.D. 585. This case is not in point, since all that was there held was that a grantee in a deed was not competent as an attesting witness to the execution of an instrument made to himself. That is an entirely different situation from the one here under consideration. Here Miller has no interest whatever in the will. He is not a beneficiary, nor had he any other interest in the estate. Instead of being incompetent as a witness, we think he certainly was a proper witness under the provision of section 11232, which provides:
"* * * And a person who subscribes the testator's name, by his direction, must write his own name as a witness to the will. But a violation of this section does not affect the validity of the will."
It is next contended that the action is barred by the statute of limitations in that the record shows that Mimey died in January, 1921, and that these proceedings to probate the will were not commenced until October, 1927. Protestants cite and rely upon the 6th subdivision of section 185, C. O. S. 1921, which provides:
"An action for relief, not hereinbefore provided for, can only be brought within five years after the cause of action shall have accrued."
Section 1096, C. O. S. 1921, provides that any person interested in an estate may, at any time after the death of the testator, petition the court having jurisdiction to have the will proved. This provision standing alone would seem to permit the proceedings to be commenced at any time after the death of the testator. This court has never passed upon the applicability of the provision of section 185, supra, as limiting the time within which proceedings to probate a will may be commenced.
The same question was presented in Re Hume's Estate, Reeves v. Hume, 176 P. 681, decided in California. Our statute governing the proceedings for probate of wills is similar to that of California. While that case was decided long after the adoption of our Probate Code, we think the rule there announced is the proper one.
The reasons there given for denying the application of the statute of limitations in such cases, we think, are sound.
The authorities are not in harmony on the question. It is recognized that Gwinn v. Melvin, 9. Idaho, 202, 72 P. 961, a case where the appointment of an administrator was involved and Allen v. Froham, 96 Ky. 313, and other cases from the latter state support the contentions of protestants. The Idaho case, as pointed out in Reeves v. Hume, supra, makes no mention of a provision of a statute like or similar to ours providing that proceedings to probate a will may be commenced at any time after the death of the testator. Referring to the rule announced in the Idaho and Kentucky cases, the court in Reeves v. Hume, supra, said:
"If we were disposed to follow these decisions, they unquestionably uphold the appellant's position. But we think, in view of the specific provisions of our probate law and the long continued practical construction of our statute on the subject, the better rule is to the contrary."
We think the California rule the better, in view of the long continued practice in this state and the special provision of our statute on the subject. We, therefore, conclude that subdivision 6, of section 185, C. O. S. 1921, does not limit the time within which proceedings to probate a will must be commenced.
The judgment is affirmed.
CLARK, V. C. J., and HEFNER, CULLISON, ANDREWS, and KORNEGAY, JJ., concur. LESTER, C. J., and SWINDALL and McNEILL, JJ., absent, not participating.
Note. — See under (1) anno. 28 L. R. A. (N. S.) 270; 28 R. C. L. p. 145 et seq., R. C. L. Perm. Supp. p. 6097; R. C. L. Continuing Perm. Supp. p. 1165. *Page 89